Argued and submitted July 15, reversed and remanded November 24, 2004, petition for review denied June 1, 2005 (338 Or 584)

Charles DENISON,
*Appellant,*

*v.*

Robert L. HODGE,
Darlene L. Hodge,
and Hodge Oregon Properties, LLC,
*Respondents.*

Robert L. HODGE,
Darlene L. Hodge,
and Hodge Oregon Properties, LLC,
*Counterclaim Plaintiffs,*

*v.*

Charles DENISON,
*Counterclaim Defendant.*

01-5494; A120614

100 P3d 1144

David B. Lothrop argued the cause for appellant. With him on the briefs was Oregon Coast Law.

Jonathan M. Radmacher argued the cause for respondents. With him on the brief was McEwen Gisvold, LLP.

Before Edmonds, Presiding Judge, and Haselton and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff brought this action for trespass, ejectment, and declaratory relief in order to assert his right to land that borders the Alsea River in Lincoln County. After a trial, the court held that defendant Hodge Oregon Properties, LLC (defendant), is the owner of the land, entered a declaratory judgment accordingly, and dismissed all of the parties' other claims as moot. Plaintiff appeals, and we reverse.

Plaintiff owns a parcel of land that was originally part of a larger parcel that also included the neighboring land that defendant owns.[1] Plaintiff's parcel was created out of that larger parcel in October 1921 by a deed from J.H. and Mary Early, the owners of the larger parcel, to J.F. Buchanan (the Buchanan tract). In 1937, the surviving owner of the larger parcel, who had remarried and was known as Mary Johnson, together with her new husband, deeded property directly downstream of the Buchanan tract to C.R. and Ruth Lee Curry, who are defendant's predecessors in interest. The area in dispute is land that formed along the river boundary of the Buchanan tract some time after the 1921 deed to Buchanan. The 1937 deed to the Currys includes at least part of that land. However, if the deed to Buchanan conveyed land to the edge of the river, the newly accreted land is part of the Buchanan tract and the Johnsons acquired no interest in it, nor could they have conveyed that land to the Currys. The trial court concluded that the deed to Buchanan did not convey to the river's edge and therefore granted judgment to defendants.

██ Although plaintiff discusses a variety of issues on appeal, the fundamental question is whether the 1921 deed from Early to Buchanan conveyed to the bank of the river whereever the river meandered.[2] That deed describes the property conveyed as:

---

[1] Plaintiff asserts alternatively that defendant has not adequately shown that he has title to the neighboring parcel as to Lincoln County. On remand, the trial court should decide whether Lincoln County is an indispensible party for purposes of the declaratory judgment claim. *See* ORS 28.110.

[2] In *Bonnett v. Division of State Lands*, 151 Or App 143, 149, 949 P2d 735 (1997), we observed,

"[W]hen land borders a body of water, a grant of that land conveys to the edge of a navigable waterway or to the thread of a nonnavigable stream. The

"That part of Lot 5, Sec. 28. T 13 S., R. 11 W. W. M. from a point of beginning on the centre [*sic*] line of the Alsea highway *ot* [*sic*] Sta 83+85, thence S 51°05 W. 60' along the centre [*sic*] line of the road; thence S 38°55' E. 54.5' *to a cedar Post on the bank of the Alsea River; thence along the bank of the Alsea River S 35°39' W 108.9_ to a cedar post*; thence N 38°55' W 165.5_ to a cedar post; thence N 51°05' E 160.0_ to a cedar post; thence S 38°55' E 82.0' to the point of beginning; Subject to the right of way of the Alsea Highway, and subject to an additional right of way 12' wide parallel to the road on the part between the road and the river for J. H. Early his heirs and assigns forever."

(Emphasis added.) The answer to the question turns on the meaning of the emphasized portion of the description, which describes the portion of the land conveyed that adjoins the river. Plaintiff argues that, because the deed describes the boundary as lying "along the bank of the Alsea River," it necessarily conveyed to the edge of the river.[3] Defendants counter that, because the description runs from one specific monument (a cedar post) to another specific monument (another cedar post) at a specific angle for a specific distance, it unequivocally conveys only the land that is within the described area and does not convey the land that has accreted along the river bank.

Thus, the language of the deed is subject to two potentially inconsistent interpretations. If the deed had simply described the boundary as beginning at one cedar post or other monument and continuing "along the bank of the Alsea River" to another cedar post or other monument, it would have clearly conveyed the accreted area, at least in the absence of stronger contrary evidence than exists in this case. For instance, in *Wilt v. Endicott*, 68 Or App 481, 483, 684 P2d

---

meander line that a surveyor may use to approximate the riparian boundary is not itself the precise boundary. Rather, the purpose of a meander line is to make it possible to calculate the acreage of the parcel for purposes of sale. The water, not the meander line, is the true boundary. * * * [T]he actual boundary moves as the waterway's course changes through the gradual processes of accretion, reliction, and erosion."

[3] The parties assume that the Alsea is a navigable waterway at the points in question.

595, *rev den,* 297 Or 824 (1984), a deed conveyed title " 'in a southeasterly direction along the bank of said Hoag's Creek to the southeast corner of said Lot 3[.]' " In deciding that the deed conveyed title to the thread of the creek, we presumed that the conveyance of title along the bank of a stream conveys riparian rights in the same way that a specific reference to a meander line does. In *Wilt,* there was nothing in the evidence to overcome those presumptions.[4]

The deed in this case differs from the deed in *Wilt* because it does not refer only to the bank of the river. Rather, it also describes a specific angle and distance. Defendant argues that, as a result, the boundary is a fixed boundary and not a meander line, thus leading to the conclusion that the Buchanan tract did not contain any of the area that has since accreted. To conclude otherwise, according to defendant, would be to ignore the references to the fixed angle and distance as well as the references to the cedar posts.

We conclude, however, that defendant's argument is defeated by the provisions of ORS 93.310.[5] Subsection (2) of that statute provides that "[w]hen permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, *the boundaries or monuments are paramount.*" (Emphasis added.) If the bank of the Alsea River constitutes a monument as contemplated by the statute, then the call to the river in the deed in this case would control over the angle and distance calls. In other words, that construction of the deed would cause the boundary to run from the first cedar post on the bank of the river along the bank of the river to the second cedar post, which is necessarily also on the bank of the river.

---

[4] The parties discuss extrinsic evidence concerning the meaning of the 1921 deed, in plaintiff's case at excessive length. Most of that evidence, which relates to later deeds and to the situation of the property, gives at best weak assistance in resolving the question before us. For example, the fact that the Johnsons expressly referred to a meander line in the 1937 deed is not inconsistent with the Earlys intending the reference to the bank of the river in the 1921 deed to refer to the same concept. The words of the 1921 deed, as read in the context of the relevant statute and of other cases considering similar words and issues, are more helpful than is the extrinsic evidence.

[5] The provisions of ORS 93.310 are unchanged since their original adoption in 1862 as part of the Deady Code. They existed at the time of the 1921 deed to Buchanan.

For purposes of this construction, the posts are artificial monuments that determine the corners of the property, while the bank functions as a natural monument along which the property line proceeds from the first cedar post to the second cedar post. The precise distance along the bank is itself undetermined because it will follow the changing sinuosities of the river. However, the specific angle and distance tell the reader where to find the second cedar post to ascertain the next corner of the described area. Thus, under that construction the boundary is the bank or the edge of the river between the two posts.

In *Belmont v. Umpqua Sand & Gravel*, 273 Or 581, 542 P2d 884 (1975), the Supreme Court implicitly held that the bank of a river is a natural monument for purposes of ORS 93.310(2). In *Belmont*, the issue concerned the location of the boundary between property that the plaintiff and the defendant owned along the South Umpqua River, a nonnavigable stream. The relevant part of the description of the property in the deed to the plaintiff provided, starting at the point of beginning, "North 4781.1 feet to the South bank of the South Umpqua River; then along the South bank of the South Umpqua River South 30° 40' E. 512.5 feet[.]" *Id.* at 585. That description, like the description in this case, referred both to the bank of the stream and to a specific angle and distance. The parties and the Supreme Court treated that description as giving the plaintiff ownership to the thread of the stream because the river was nonnavigable. The issue before the court was the boundary between the plaintiffs' and the defendant's property within the stream itself.[6] The defendant argued that the boundary should continue north beyond the 4781.1 foot call until it reached the thread of the stream. The plaintiffs argued that the boundary should change when it reached the 4781.1 foot point and then run at a northeastward angle in order to meet the thread of the river at a perpendicular angle. Because the 4781.1 foot run did not necessarily end at the bank of the river, the plaintiffs suggested two other possible locations, the high water mark of the river or the low water mark of the river. *Id.* at 585-86.

---

[6] The report of the case contains a helpful map. *Belmont*, 273 Or at 587.

In deciding the issue before it, the Supreme Court observed that the description "designates the 'bank of the South Umpqua River' as a monument." *Belmont*, 273 Or at 585. Thus, if the reference to the bank meant the water's edge, there would be an inconsistency between the call to the monument and the call regarding the distance, in which case the monument would control under ORS 93.310. *Id.* The court said that, where a grantor owns to the middle of a non-navigable stream and there is a call to the bank of the stream, the grantor's rights to the thread of the stream are included in the conveyance. "In such a case, although the description is in terms of the bank as the boundary, the title to the bed of the river passes by implication along with the bounded upland." *Id.* at 588.

For the purposes of this case, the significance of *Belmont* is its recognition that a deed that refers both to the bank of a stream and to a specific angle and distance conveys along the bank rather than along the specific call, thus conveying full riparian rights. In *Belmont*, the rights in issue involved a nonnavigable stream. In this case, the issue concerns accreted rights on a navigable stream. In either circumstance, the grantee acquires riparian rights. Because the boundary of the Buchanan tract along the Alsea River constitutes a riparian boundary, and because plaintiff received title to the entire Buchanan tract, it follows that plaintiff owns any land that has accreted along that riparian boundary. The trial court erred in declaring otherwise.

Plaintiff's remaining assignments of error do not require discussion in light of the above analysis.

Reversed and remanded.[7]

---

[7] As a result of our decision the parties' remaining claims are no longer moot. Our reversal of the declaratory judgment thus necessarily entails reversing the dismissal of those claims.